IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANE GORDAN, )
        Plaintiff, )
)
v. ) No. 07 C 5867
) Judge Blanche M. Manning
)
THE CITY OF HARVEY, )
        Defendant. )

## MEMORANDUM AND ORDER

Plaintiff Shane Gordan[1] sued the City of Harvey alleging that it discriminated against him when it filled vacant supervisory positions in the police department with African-American and Hispanic individuals who were less qualified than their white counterparts. Specifically, Gordan alleges that Harvey violated his rights under Title VII of the Civil Rights Act of 1964 by failing to promote him to sergeant in a timely manner on account of his race, which is white. The City moves for summary judgment, which, for the reasons stated below, is denied.

**I. Facts**

Before delving into the facts, the court notes that certain deficiencies in the parties' statements of fact made resolution of this case more difficult than need be. The specific problems are discussed in more detail below, but the court takes this opportunity to remind the parties that properly constructed and supported statements of fact can greatly assist the court in both familiarizing itself with the facts of the case and ruling expeditiously on the underlying motion. With that said, the court sets forth the facts as supported by the record evidence.

Gordan was hired by Harvey as a police officer in 2000. He graduated from the police academy in December of 2000 and completed his field training in the Spring of 2001. Prior to becoming a patrol officer for Harvey, Gordan had no law enforcement experience. In November

---

[1]The amended complaint originally named two plaintiffs, Richard Schall and Shane Gordan. However, the magistrate judge dismissed Richard Schall from the case after he refused to be deposed. Dkt #43. Accordingly, the only remaining plaintiff is Shane Gordan. The court also notes that while the caption reflected on the amended complaint and the court docket spell Gordan's name "Gordon," the defendant informs the court that the correct spelling is Gordan. Thus, the court will use this spelling in its order.

of 2006, Harvey administered a civil service examination for the position of sergeant.[2] Gordan, who placed second highest, was promoted to sergeant in February 2007, as well as officers Forbes (highest score) and White (third highest score). Accordingly, Gordan is currently employed as a patrol sergeant by the City of Harvey. Gordan claims, however, that he should have been promoted earlier to sergeant and would have been but for the fact that Harvey discriminated against Caucasians.

Eric Kellogg became Mayor of Harvey in April 2003. The chain of command at the Harvey Police Department starts with patrol officer, then moves up to sergeant, commander, deputy chief, and chief of police. After Mayor Kellogg took office, Andrew Joshua became the Chief of Police for Harvey, and Denard Eaves became a Deputy Chief. After Chief Joshua retired in 2007, Eaves became the Acting Chief of Police for Harvey. Since Eaves became a deputy chief, Mayor Kellogg has conferred with him on a variety of promotions and appointments in the Harvey Police Department. During those conversations, Eaves made recommendations to Mayor Kellogg on promotions and appointments.[3]

*Gordan's Disciplinary History*

Between 2001 and 2005, Gordan incurred numerous disciplinary demerits. With respect to all of the disciplinary proceedings described herein, Gordan argues that he was reprimanded not based on his race or his failure to abide by department rules and regulations, but because he was being "targeted" due to his attempts to organize a patrolmen's union.

On March 28, 2001, Gordan was dispatched twice regarding a juvenile battery and went to the wrong location each time. As a result of Gordan's failure to go to the correct location, he was given a written reprimand. Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.07 (Neglect of Duty), § 2.41.10 (Incompetence), and § 2.41.60 (Attention to Duty). On November 23, 2001, Gordan was called by dispatch via the radio main band seven times, three times on radio band two, and on "Alerts" once, but did not respond to any of these eleven attempts to contact him. As a result of Gordans' failure to respond, Gordan was given a one-day suspension without pay. Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.07 (Neglect of Duty) and § 2.41.10 (Incompetence).

---

[2]Although this statement of fact does not indicate whether Gordan had previously sat for the exam or if the exam had previously been offered, Harvey does not dispute Gordan's statement of additional fact number 17 that Gordan took the civil service test for promotion to sergeant when it was "first" offered in 2006.

[3]The court notes that this fact is taken from Harvey's statement of fact number 9. Although the statement of fact does not contain any citation to the record in violation of Local Rule 56.1, the court will consider it in ruling on the motion for summary judgment because Gordan agrees with the statement of fact and it is clear that it was taken from Eaves' affidavit.

On January 13, 2002, Harvey contends that Gordan called in sick less than two hours prior to the start of his shift (despite an apparent rule requiring two hours' notice). At his deposition, Gordan contested this assertion, stating that he called in sick two hours and four minutes prior to his shift. As a result of purportedly calling in sick without proper notification, Gordan was given a written reprimand. Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.01 (Violation of Rules) and § 2.41.02 (Familiarization with Rules).

On July 20, 2002, Gordan was not present for roll call at 6:30 a.m. and did not arrive for duty until 8:00 a.m. As a result of coming to work late, Gordan was given a written reprimand and his salary was docked for one and a half (1½) hours. Additionally, the Harvey Police Department found Gordan to be in violation of § 2.41.06 (Readiness for Duty) of the Harvey Police Department's Rules and Regulations.

On August 17, 2002, Gordan called in to work sick but was not at home when someone from the Harvey Police Department made a sick check via telephone at his home number. As a result of failing to answer his phone on a sick check, Gordan was suspended from duty for one day without pay. Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.10 (Incompetence) and § 2.41.68 (Reporting Sick). On August 19, 2002, in responding to assist another patrol car, Gordan drove 85 m.p.h. in a posted 40 m.p.h. zone. As a result of traveling at an excessive speed, Gordan was suspended from duty for three days without pay. Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.01 (Violation of Rules) and § 3.71.07 (Use of Emergency Warning Devices).

On October 10, 2002, Gordan failed to use his in-car microphone on four calls and two traffic stops. As a result of Gordan's failure to use his microphone, Gordan was suspended from duty for two days without pay. Additionally, the Harvey Police Department found Gordan to be in violation of the Department's Operations Manual Order # 43-02 and § 2.41.10 (Incompetence) of the Harvey Police Department's Rules and Regulations.

On October 11, 2002, Gordan failed to use his in-car microphone on four calls and one traffic stop. As a result of Gordan's failure to use his microphone, Gordan was suspended from duty for three days without pay. Additionally, the Harvey Police Department found Gordan to be in violation of the Department's Operations Manual Order # 43-02 and § 2.41.10 (Incompetence) of the Harvey Police Department's Rules and Regulations. On October 12, 2002, Gordan failed to use his in-car camera and microphone on three calls and two traffic stops. Gordan stated in his deposition that his equipment was not working. As a result of his failure to use his camera and microphone, Gordan was suspended for five days without pay. Additionally, the Harvey Police Department found Gordan to be in violation of the Department's Operations Manual Order # 42-02 and § 2.41.10 (Incompetence) of the Harvey Police Department's Rules and Regulations.

On January 13, 2003, Harvey asserts that Gordan failed to make a premises check of

businesses while on the midnight shift.  Gordan disputes this, but the deposition testimony he points to in support of his denial does not refute that he failed to make a premises check.  Rather, Gordan stated in his deposition that "I was suspended basically because a burglary occurred in my area sometime between January 12 and January 13th, and I was held responsible for it." Gordan Dep. at 39, ll. 10-13, Exh. 10 to Gordan's Rule 56.1(b)(3) Statement.  According to Harvey, as a result of his failing to make the premises check, Gordan was suspended from duty without pay for three days.  Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.01 (Violation of Rules), § 2.41.07 (Neglect of Duty), § 2.41.60 (Obedience to Orders), and §2.41.60 (Attention to Duty).

On February 5, 2003, Gordan issued a citation to a motorist for having no license plate light.  Gordan, as well as all patrolmen in the Harvey Police Department, had been informed repeatedly that motorists are to be given warnings for a license plate lights violation. Gordan denies this statement of fact, but again, the deposition testimony he points to fails to refute the statement, and indeed, supports Harvey's version of events.  Specifically, Gordan stated in his deposition that "I wrote a moving violation, a traffic ticket to an individual, which is a law that is enforced in the Illinois Vehicle Code, Chapter 625; and I was advised by Sergeant Sampson that it is against Harvey Police Department policy to enforce this particular law, therefore, I was suspended." Gordan Dep. at 40, ll. 11-17, Exh. 10 to Gordan's Rule 56.1(b)(3) Statement.  As a result of his failure to give a warning instead of a citation, Gordan was suspended from duty without pay for one day.  Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.07 (Neglect of Duty), § 2.41.10 (Incompetence), § 2.41.16 (Obedience to Orders).

On March 14, 2003, Gordan failed to report for his regularly scheduled court appearance.  Gordan points to his own deposition testimony that he was on call that day and had received a traffic accident report dispatch call just prior to the time that he was to appear in court. According to Gordan, he informed the dispatch caller that he would be late for court, but ultimately ended up missing the entire court call due to his duties associated with the traffic accident.  As a result of Gordan's failure to appear for court, he was suspended from duty without pay for three days.  Additionally, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.01 (Violation of Rules), § 2.41.07 (Neglect of Duty), § 2.41.10 (Incompetence A, B, C, and H), and § 2.41.37 (Court Attendance and Conduct).

Gordan failed to appear at Markham Court for his scheduled court date on four separate dates: August 12, 2004, August 17, 2004, October 22, 2004, and January 12, 2005. As a result of Gordan's failure to appear in court, the Harvey Police Department found Gordan to be in violation of Harvey Police Department's Rules and Regulations § 2.41.01 (Violation of Rules), § 2.41.10 (Incompetence A), and § 2.41.37 (Court Attendance and Conduct). Additionally, Gordan was suspended from duty without pay for one day.  The one-day suspension was subsequently reduced to a reprimand.

Gordan does not believe he was disciplined because of his race in Disciplinary

Action numbers 53-01, 09-02, 63-02, 67-02, 68-02, 75-02, 76-02, 77-02, 01-03, 04-03, 07-03, 12-03, 13-05.[4]

*Gordan's Discrimination Claims*

Gordan claims that Harvey discriminated against white officers because the union complained about a transmission that came over the radio. Although Gordan did not hear the radio transmission, he believes the radio transmission was made by a detective in 2003 or 2004 in which the detective stated that Harvey was going to get rid of white officers.

Gordan also claims that Harvey discriminated against white officers because Chief of Police Joshua told him promotions were out of his hands and because Gordan believed that Mayor Kellogg made the promotion decisions based on race. Specifically, Gordan claims that Harvey discriminated against white officers because minority individuals were promoted to positions for which Gordan felt he was more qualified.

Gordan prepared a list of 47 non-white officers who were either promoted or assigned to various positions within the Harvey Police Department since 2003. The list does not include Caucasians. However, Caucasians have been promoted in the Harvey Police Department since 2003. Gordan believes that Mayor Kellogg made the promotions in the police department though Gordan never had any discussions with Mayor Kellogg about the promotion process. Gordan also never asked Mayor Kellogg if he would consider him for a promotion in the police department. Similarly, Gordan never asked Deputy Chief Eaves if he would consider Gordan for a promotion in the police department. In addition, Harvey, pointing to an affidavit by Deputy Chief Eaves, contends that Gordan never asked anyone in the administration to consider him for a promotion. Gordan disputes this statement of fact on the ground that Eaves does not have personal knowledge of whether Gordan ever spoke with anyone in the administration about considering him for a promotion. Indeed, the court notes that Eaves' affidavit even qualifies his statement when he attests that "*to the best of my knowledge* [Gordan never approached] anyone else in the administration [] requesting a promotion." Eaves Affidavit, ¶ 8 (emphasis added). The court sustains Gordan's objection.

Gordan believes he was more qualified for promotion or job assignments than 44 of the 47 non-white officers on his list. He also believes that he was more qualified than an African-American who was named to a director position even though Gordan has no idea what the director position entails. In addition, Gordan believes he was more qualified than an unspecified minority officer he did not know anything about, and was unsure whether the minority officer was male or female. Gordan further believes, for various reasons, that he was more qualified than over 25 minority officers who were appointed to other positions. Finally, Gordan believes he was more qualified for a supervisory position than over 20 minority officers who had worked

---

[4]It is not clear which these disciplinary actions these refer to given that Harvey does not identify the disciplinary actions by number in its earlier descriptions.

at the Harvey police department longer than he had.

Gordan asserts that Harvey has a "hybrid" system of civil service and non-civil service hires and promotions. Specifically, Gordon contends that in addition to hiring and promoting persons through competitive examination civil service procedures which are mandated by law, Harvey also hires "non-civil service" police officers and appoints police officers to act as "non-civil service sergeants." Harvey disputes the statement of fact; however, its record citations in support of its denial are problematic. First, Harvey "disputes" Gordan's statement regarding a "hybrid system," asserting that it has hired non-civil service full-time patrol officers on a temporary basis. Harvey cites in support the deposition of Andrew Joshua, the Harvey Chief of Police until he retired in 2007, that was apparently taken in another case, *Daigre v. Harvey*, 04 C 4224 (N.D. Ill.). While Joshua's referenced deposition testimony mentions that certain officers were appointed for what appears to be a 120-day period and some were "civil service," it fails to provide any specifics regarding the two programs. Moreover, Joshua's testimony does not refute Gordan's assertion that there were civil service hires and non-civil service hires; indeed, it appears to support Gordan's contention.

Second, Harvey states that full-time, non-temporary, patrol officers must pass an exam. Harvey cites to Gordan's deposition in which he states, in response to a question about what process he went through to to be hired by Harvey, that he first took a test. Gordan Dep. at p. 12. But Gordan's individual experience does not stand for the proposition that Harvey's official procedure requires every candidate to take an exam.[5] Finally, Harvey bases its denial on its assertion that it has filled some supervisory positions with some individuals that were appointed and with individuals who took a civil service exam. Harvey cites to Eaves' affidavit, ¶¶ 5 and 9, in support. Paragraphs 5 and 9 state as follows:

> 5. After I became deputy chief through and including the present, Mayor Kellogg conferred with me on a variety of promotions and appointments in the Harvey Police Department. During those conversations, I made recommendations to him on promotions and appointments. To my knowledge, all promotions and job assignments in the police department have been made based on merit and experience, not on the race of the officer.
> . . .
>
> 9. Shane Gordan was not promoted prior to February 2007 because, I believe prior to that time he did not have the experience level needed, and he had numerous disciplinary actions against him. As a result, I did not recommend him for promotion prior to February 2007.

---

[5]Indeed the fact that it is undisputed that Gordan took the civil service exam for sergeant when it was *first* offered in 2006 indicates that there was some procedure other than a civil service exam prior to 2006.

Page 6

As an initial matter, these two paragraphs do not support the statement of fact that supervisory positions were filled both with individuals who were appointed and those who took the civil service exam. More important, Harvey fails to lay a foundation that Eaves has personal knowledge of the official procedure regarding how positions in the police department were filled. While Eaves' affidavit is based on personal knowledge, its value is limited by what it does not say. For example, while Eaves' affidavit states that he made recommendations, he does not state that he is the only person who made recommendations, that he made recommendations for every open position or that the mayor always followed his recommendations. Thus, Eaves' affidavit is of limited value given that Eaves does not appear to be making statements regarding the official hiring policies and procedures of the Harvey police department, and discusses only his particular role in the hiring process.

Ultimately, Harvey fails to simply and coherently lay out its official hiring practices and procedures over the relevant time period using evidence that is properly admissible on summary judgment. As a result, the court does not have a firm grasp on Harvey's official hiring practices and procedures during the relevant period. However, because it does not matter to the court's resolution of the case, the court need not comment further.

## II. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the movant's asserted facts. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

## III. Analysis

In support of his discrimination claim, Gordan states that he is proceeding only under the indirect burden-shifting method originally articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of reverse discrimination using the indirect method in a failure to promote claim, Gordan must show: (1) that "background circumstances" support an inference that Harvey is "one of those unusual employers who discriminates against the majority" or, in other words, that "background circumstances" exist to show an inference that the employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand"; (2) that Gordan applied for and was qualified for the position sought; (3) the plaintiff was rejected for that position; and (4) that Harvey granted the position to non-whites who were not better qualified for the position. *Hague*

Page 7

v. *Thompson Dist. Co.*, 436 F.3d 816, 821-22 (7th Cir. 2006); *Mills v. HealthCare Serv. Corp.*, 171 F.3d 450, 455-457 (7th Cir. 1999).

Once the plaintiff satisfies its prima facie case, the burden switches to the employer to produce evidence of a legitimate nondiscriminatory reason for the plaintiff's adverse employment action. *Hague*, 436 F.3d at 823 (citation omitted). If the employer does so, then the burden shifts back to the plaintiff to show that the employer's reason for the adverse employment action was pretextual. *Id.*

    A.    <u>Prima Facie Case</u>

        1.    *Background circumstances*

Gordan asserts that the record "overflows" with evidence of the "background circumstances" described in the first factor of the prima facie case. Specifically, he points to the following "background circumstances": (1) After Kellogg became the mayor in 2003, he re-hired four African-American former Harvey police officers and appointed them to serve as commanders; (2) Andrew Joshua, Harvey's former chief of police, stated at his deposition that Kellogg favored "persons of color over white people" and further stated that "everyone was African-American. No one that [Kellogg, the mayor] selected, or picked, or thought about was Caucasian"; and (3) from April 15, 2003 to September 10, 2007, 35 of the 36 sworn police officers that Harvey hired were African-American or Hispanic.

As for the first argument, that Kellogg rehired four African-American former Harvey police officers and appointed them as commanders, Gordan concludes from this fact that Kellogg, and therefore, Harvey, favored African-Americans over whites. But, this fact in and of itself fails to show any discrimination against white people because Gordan does not place the hiring of these four African-American former officers in any kind of context. For example, Gordan does not state how many commanders were hired in total, or whether any white individuals applied for these positions. Without some context, the simple fact that Kellogg hired four African-American former officers as commanders is unpersuasive in terms of demonstrating that Harvey is "one of those unusual employers which discriminates against the majority." *Mills*, 171 F.3d 455 (citation omitted).

In that same vein, Gordan also asserts that over a period of approximately three and a half years, from April 15, 2003 to September 10, 2007, 35 of the 36 sworn police officers that Harvey hired were African-American or Hispanic. Prior to addressing whether this suffices to demonstrate the "background circumstances" required in the prima facie case, the court notes several problems with the parties' presentation and interpretation of the numbers of sworn officers who were hired.

In addition, Gordan fails to explain how he calculated the number of sworn police officers that were hired and their race. In his additional statement of fact number 9, Gordan points to his own Exhibit 8 in support of this contention. Gordan's Exhibit 8 is a chart entitled "Harvey

Police Hires Following Inauguration of Eric Kellogg as Mayor on April 10, 2003 (extracted from Plaintiff's Exhibit 6)." The chart then lists 36 names with the date they were purportedly hired and the individual's race. Plaintiff's Exhibit 6, which was purportedly the source of information for Exhibit 8, is a copy of Harvey's supplemental answers to Gordan's supplemental interrogatories. Gordan's supplemental interrogatory number 1 asks Harvey to "[i]dentify by name and race all persons employed by the City of Harvey on April 1, 2002, who was [sic] authorized to exercise police powers on behalf of the City of Harvey." Harvey objected to the interrogatory, but agreed to "limit its responses to the time frame of April 1, 2003 - December 31, 2004."[6] Plaintiff's Exh. 6 at 1. Harvey then lists 97 names with their position, what appears to be their date of hiring, and their race. It appears and the court assumes that, using the hire date column provided by Harvey in Exhibit 6, Gordan created Exhibit 8, which lists the individuals who were hired after April 1, 2003, the date that Kellogg became mayor of Harvey.

The court further notes that in response to Gordan's additional statement of fact number 9, Harvey denies that it hired 36 persons as sworn officers in its police department, 35 of whom were African-American or Hispanic. In support, however, Harvey only cites to Plaintiff's Exhibit 6, the chart that Gordan created, and fails to articulate any reason it is "disputing" this statement of fact. It is not this court's job to sift through the chart created by Gordan in an attempt to ascertain why Harvey is disputing this additional statement of fact. If Harvey believes that Exhibit 8 somehow misrepresents the figures it presented to Gordan in response to his supplemental interrogatory number 1, as shown in Exhibit 6, then Harvey needs to expressly identify such misrepresentations. In the absence of some particular reason why Exhibit 6 should not be accepted as correct, the court assumes it accurately summarizes who was hired by Harvey as a police officer after April 1, 2003, and the race of each of those individuals.[7]

Setting aside these problems, the court now addresses whether Gordan's chart satisfies the "background circumstances" necessary for the first element of the prima facie test. As noted above, the court has concerns about making any conclusions regarding a discriminatory purpose without knowing the context in which the 36 individuals were hired. *See Millbrook v. IBP, Inc*, 280 F.3d 1169, 1177 (7th Cir. 2002)("Without knowing how many of the forty Quality Control

---

[6] Although Harvey indicates it is limiting its response to the period from April 2003 to December 31, 2004, it provides names of individuals with hire dates in 2005, 2006 and 2007. The court thus assumes that the "December 31, 2004" date should read "December 31, 2007."

[7] The court further notes that in its statement of material fact number 45, Harvey states that "Plaintiff prepared a list of 47 non-white officers who were either promoted or assigned to various positions within the Harvey Police Department since 2003. The list does not include Caucasians." In his response, Gordan agrees with the statement of fact. *See* Dkt. #59 at p 10. According to Gordan's deposition testimony, he prepared the list which depicts, to the best of Gordan's knowledge, the African-American and Hispanic officers who were promoted since 2003. *See* Gordan Dep., p. 73-74, attached as Plaintiff's Exhibit 10. The court has no knowledge about how this list relates, if at all, to the list of 36 officers that Gordan has attached as his Exhibit 8.

Inspector positions became available during that time frame, the number and race of the candidates applying for those positions, and the candidates' relative qualifications, '[s]uch a list is next to worthless.'")(citation omitted). Nevertheless, in light of the testimony of Andrew Joshua, the former chief of police, that "[n]o one that [Kellogg] selected, or picked, or thought about was Caucasian," and because the court must make all reasonable inferences in favor of the non-moving party, the court concludes that Gordan has shown "background circumstances" sufficient to establish the first prong of his prima facie case.

### 2. *Plaintiff applied for and was qualified for the position*

Harvey contends that Gordan cannot demonstrate that he applied for a promotion prior to seeking the position of sergeant to which he was appointed. Gordan asserts that he need not make this showing because Harvey did not post notices of vacancies and did not have an application process. In support, Gordan directs the court's attention to *Box v. A&P Tea Co.*, 772 F.2d 1372 (7th Cir. 1985). In *Box*, the Seventh Circuit stated that "[w]hen an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat" and "[i]n this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied." *Id*. at 1377 (citations omitted).

Gordan appears to attempt to satisfy this burden by asserting that he "complained to defendant's chief of police about defendant's practice of filling sergeant positions by appointment rather than by competitive examination." He also states that he made the same complaint in his EEOC charge when he averred that he had not been able to apply for a promotion to sergeant because of Harvey's purported race-based policies.

Harvey contends that complaints such as Gordan's do not rise to the level of expressing an interest in the specific position at issue. *Box*, 772 F.2d at 1377 (holding that plaintiff's statement on EEOC complaint that individuals with less seniority had been promoted and her two statements, in a deposition and an affidavit, that she requested that her supervisor provide her with "more training" so she could "move up" and "advance" did not suggest anything more than a "vague interest" in the assistant manager position and were insufficient to establish the second prong of the prima facie case). The court agrees that the two statements that Gordan points to in support of his contention that he made known his desire to be promoted to sergeant do not in and of themselves establish that Gordan expressly asked to be promoted to sergeant.

However, the court has reviewed the relevant portion of Gordan's deposition and concludes that Gordan's actual testimony establishes that he specifically expressed an interest in being promoted to sergeant. For example, when asked if he ever spoke to Andrew Joshua, Harvey's Chief of Police, regarding his belief that there was a violation of Harvey's nondiscrimination policy, Gordan stated that he first complained in 2003 that "[s]everal less qualified or noncivil service individuals were promoted to positions that I was more qualified or should have been given the opportunity to test for." Gordan Dep. at 49, Plaintiff's Exh. 10. When asked if he had given Joshua any examples, Gordan stated that he told Joshua that "at the

time there were several individuals who were appointed to positions that our civil servicemen should have been offered an exam for." *Id*. at 50. When asked what positions those were, he responded "sergeant." *Id*. Moreover, Gordan also testified that he spoke with Joshua about the issue in both his personal capacity and as a representative of the union. *Id.* at 51. Finally, Gordan testified that he had a telephone call with someone at the Department of Justice regarding his charge of discrimination and that Joshua was present for the conversation. *Id*. at 62. During that conversation, when the Justice official asked Gordan why he felt he was being discriminated against, he stated that he "believe[] [he] was passed over for promotions due to the fact that I am Caucasian, that I was given – kept in an assignment that less –where less-qualified people were promoted ahead of me, that I was – subsequently, I lost wages and benefits due to the fact that these other individuals were promoted and I wasn't." *Id*. at 63-64.

As Gordan's testimony indicates, he had several conversations with Joshua about his belief that Harvey, through the mayor, was discriminating against Caucasians when appointing people to the position of sergeant. Viewing the evidence in a light most favorable to Gordan, the court finds that Gordan did convey his interest in being promoted to sergeant and that had he known of an opening for sergeant, he would have applied.[8]

However, in addition to showing that he would have applied for the position of sergeant, this aspect of the prima facie case also requires Gordan to show that he was qualified for the position (prior to having taken the exam). Harvey contends that Gordan has not demonstrated that he was qualified for the position.[9] The court disagrees. As an initial matter, Harvey promoted Gordan to sergeant in 2007 after he placed second on the sergeant's exam and Harvey does not indicate what, if anything, made him qualified for sergeant in 2007, but not earlier. In addition, Gordan points to the deposition testimony of Andrew Joshua, the former Harvey Chief of Police, who identified four non-Caucasian individuals who were promoted to sergeant. According to Joshua, he would have chosen Gordan over these other individuals to fill a vacant sergeant position. Viewing the evidence in a light most favorable to Gordan, the court concludes that Gordan has established that he was qualified for the position of sergeant prior to taking the exam and being promoted to the position.

### 3. *Whether less qualified non-Caucasians were granted the sergeant position*

Harvey does not assert that Gordan has failed to establish the fourth prong of the prima facie case that it granted the position to non-Caucasians who were less qualified for the position.

---

[8] Indeed, it is undisputed that Gordan took the test for the sergeant position the first time it was offered in 2006.

[9] Harvey makes no effort to substantiate this assertion. Indeed, its entire argument with respect to Gordan's qualifications is one sentence: "Nor has [Gordan] come forward with evidence that he was qualified for such a promotion prior to his promotion to sergeant in 2007." Defendant's Memorandum at 7, Dkt. #54. Harvey fails to address the issue in its reply.

Accordingly, the court assumes that, for purposes of summary judgment, Harvey concedes that Gordan has successfully established this fourth prong. Because Gordan has satisfied his prima facie case, the burden then switches to Harvey to produce evidence of a legitimate non-discriminatory reason for failing to promote Gordan.

### B. Harvey's Reason for not Promoting Gordan Earlier

Harvey contends that Gordan was not promoted earlier because he did not have the required experience and had received numerous disciplinary actions against him. In support of its position, Harvey points to the affidavit of Denard Eaves, who became the acting Chief of Police for Harvey after Andrew Joshua retired in 2007. In his affidavit, Eaves states that:

> Shane Gordan was not promoted prior to February 2007 because, I believe prior to that time he did not have the experience level needed, and he had numerous disciplinary actions against him. As a result, I did not recommend him for promotion prior to February 2007.

Eaves affidavit, ¶9, attached as an exhibit to Harvey's Rule 56.1 Statement of Material Fact.

The court agrees with Gordan that Eaves' affidavit lacks foundation. As Gordan argues, Eaves does not aver that he actually made recommendations for promotion to sergeant. The court notes that Andrew Joshua, Eaves' predecessor, testified in his deposition that he did *not* have any involvement in selecting persons to be appointed to sergeant. *See* Joshua Dep. at 20, Plaintiff's Exh. 11. Moreover, Harvey states that Eaves did not become the acting Chief of Police until 2007, when Joshua retired, but Harvey fails to state when that transition occurred. Was Eaves even in a position to "recommend" Gordan prior to February 2007? Ultimately, Eaves' affidavit fails to establish: (1) that he made recommendations to the mayor as to whom should be promoted to sergeant; (2) that the mayor followed these recommendations as a matter of procedure or that a recommendation from Eaves was a condition precedent to being promoted; or (3) that he was in a position to recommend Gordan for promotion prior to February 2007, given that he did not become the acting Chief of Police until some unspecified time in 2007 and given that Gordan had taken the sergeant's exam in 2006.

Because Eaves' affidavit lacks foundation, the court cannot consider it on summary judgment. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002)("In granting summary judgment, the court may consider any evidence that would be admissible at trial."). Given that Harvey points to no other evidence in the record in support of its assertion that Gordan was not promoted because he lacked experience and had numerous disciplinary actions against him, Harvey has failed to meet its burden of producing evidence of a legitimate nondiscriminatory reason for not promoting Gordan. As a result, the court denies Harvey's motion for summary judgment.

## IV. Conclusion

Because Gordan has satisfied the prima facie elements that were challenged by Harvey, and Harvey has failed to demonstrate a legitimate non-discriminatory reason for failing to promote Gordan earlier, the court denies Harvey's motion for summary judgment. This case is set for status on August 4, 2009 at 11:00 a.m., in order to set a trial date.

**ENTER:**

**Date**: July 20, 2009

_____
**Blanche M. Manning**
**United States District Judge**